# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:14-CV-00008-RJC-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF NORTH CAROLINA EX REL. ROY COOPER, ATTORNEY GENERAL, <br><br> Plaintiffs, <br><br> v. <br><br> AUTO FARE, INC., SOUTHEASTERN AUTO CORP., AND ZUHDI A. SAADEH, <br><br> Defendant. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on the "Defendants' Motion to Dismiss Plaintiffs' Complaint," Doc. 8, filed March 7, 2014 and the parties' associated briefs and exhibits, Docs. 9, 11 and 12.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>denied</u>, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This is an action under the Equal Credit Opportunity Act, 15 U.S.C. § 1691-1691f ("ECOA"), and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§

75-1.1 et seq. ("UDTPA"). Plaintiffs allege that Defendants engaged in a pattern or practice of "reverse redlining" by intentionally targeting African American purchasers at their used car dealerships for unfair and predatory loans.

Accepting the factual allegations of the Complaint as true, Defendants owned and operated two "buy here, pay here" used car dealerships known as Auto Fare and United Car Sales. Doc. 1 at ¶¶ 5–7, 9, 11. Defendant Saadeh determines the terms of sales and financing at the dealerships including sales prices, down payments, and interest rates. He also gives final approval for loans and repossessions. Id. at ¶ 7. The Complaint alleges that from at least 2006 through at least 2011, Defendants violated ECOA by intentionally targeting African American purchasers and extending them credit on unfair and predatory terms. Id. at ¶ 10. The Complaint alleges that Defendants extended credit without properly assessing the purchasers' creditworthiness or ability to repay. Defendants employed unfair practices including charging sale prices in excess of industry standard suggested retail prices and far in excess of wholesale prices paid by Defendants; disproportionately high down payments and annual percentage rates (APRs) as compared to other subprime used car dealers; disproportionately high rates of repossession as compared to other subprime used car dealers; and repossessions where customers were not in default. Id. at ¶¶ 13–18. Plaintiffs allege that Defendants profited from these practices. Id. at ¶ 19.

The Complaint also alleges that Defendants intentionally targeted African-American purchasers for these installment sale contracts containing unfair and predatory terms. Id. at ¶¶ 11, 15, 19. The Complaint states that the dealerships are located in parts of Charlotte with a high concentration of African Americans, and that a significant majority of the purchasers have been African American. Id. at ¶¶ 11-12. Plaintiffs allege that Defendant Saadeh made statements evidencing his interest in African-American customers because he believed they possess inferior

intellect and fewer credit options, and were more likely to accept the terms of these installment contracts. Id. at ¶ 11. Plaintiffs allege that Saadeh has referred to the dealerships' African-American customers and African Americans in general as "niggers" and "monkeys." Id. They also allege that he spoke of employing a particular sales agent because that individual was especially adept at persuading African Americans to buy cars. Id.

The Complaint includes an example of an African-American purchaser who entered into an installment sale contract with Defendants containing some of the unfair and predatory terms. Id. at ¶ 18.

Plaintiffs filed their Complaint on January 13, 2014. On March 7, 2014, Defendants filed this Motion to Dismiss. In their Motion, Defendants contend that the Complaint does not allege sufficient facts to show that: (1) Defendants intentionally targeted African-American purchasers for unfair and predatory lending terms; (2) Defendants treated African-American purchasers less favorably than non-African-American purchasers; and (3) Defendants maintained a policy or practice that disadvantaged African-American purchasers.[1]

---

[1] Although Defendants initially argue that Plaintiffs' North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") claim should be dismissed, they ultimately concede that Plaintiffs have met the minimum pleading requirements to assert a violation of UDTPA. Consequently, the undersigned will consider only the ECOA claim.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id.

**B.     ECOA Claim**

Plaintiffs argue that they have sufficiently plead that Defendants engaged in a pattern or practice of discrimination under ECOA. The Attorney General of the United States is authorized to initiate an enforcement action where there is reason to believe that a creditor is engaged in a pattern or practice that violates ECOA. See 15 U.S.C. § 1691e(h).

To establish a pattern or practice of discrimination, Plaintiffs must prove that Defendants either (1) maintained a discriminatory policy, or (2) engaged in acts of discrimination as a matter of "regular procedure." See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 360 (1977) (Title VII); Garcia v. Johanns, 444 F.3d 625, 632 (D.C. Cir. 2006) (ECOA); EEOC v. W. Elec. Co., 713 F.2d 1011, 1016 (4th Cir. 1983) (ADEA). Plaintiffs must prove "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts. . . . [R]acial discrimination [must be] the company's standard operating procedure[—]the regular rather than the unusual practice." Teamsters, 431 U.S. at 336. The "focus often will not be on individual [acts], but on a

pattern of discriminatory decision making." Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 876 (1984) (quoting Teamsters, 431 U.S. at 360 n.46).

When a discriminatory policy is declared openly, that policy alone is sufficient to meet the pattern or practice requirement. It is unnecessary for the Plaintiffs to prove specific occasions where the discriminatory policy was carried out in order to establish liability. See United States v. Gregory, 871 F.2d 1239, 1243 (4th Cir. 1989) ("[I]f the admissions [of a policy of discrimination] are credited, the . . . violation has been proven."); United States v. Hughes Mem'l Home, 396 F. Supp. 544, 551 (W.D. Va. 1975) ("The demonstrated existence of a policy of discrimination is sufficient to constitute the pattern and practice . . . .").

ECOA makes it unlawful for "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race [or] color." 15 U.S.C. § 1691(a). Many plaintiffs bring claims under ECOA based upon the denial of credit to applicants who are members of a protected class under the statute. See Hargraves v. Capital City Mortg. Corp., 140 F. Supp. 2d 7, 20 (D.D.C. 2000), partial reconsideration on other grounds by 147 F. Supp. 2d 1 (D.D.C. 2001). In contrast, "reverse redlining" claims are based upon targeting members of a protected class for the extension and servicing of credit under unfair and predatory terms. See id. at 20. Notwithstanding this distinction, "reverse redlining" claims also violate ECOA. See id. at 20, 23; see also M & T Mortg. Corp. v. White, 736 F. Supp. 2d 538, 574–75 (E.D.N.Y. 2010) (same); Matthews v. New Century Mortg. Corp., 185 F. Supp. 2d 874, 887–88 (S.D. Ohio 2002) (denying motion to dismiss ECOA "reverse redlining" claim).

The undersigned finds the decision in Hargraves v. Capital City Mortgage Corporation to be persuasive. To establish a prima facie case of "reverse redlining," Plaintiffs must prove: (1) unfair and predatory loan terms; and (2) that they were intentionally targeted by Defendants on the

basis of race or that Defendants' practices have a disparate impact on the basis of race. Hargraves, 140 F. Supp. 2d at 20. The Hargraves court also held that plaintiffs need not show that the defendant made loans to non-African Americans on more favorable terms. Id.

The undersigned finds that Plaintiffs have sufficiently plead their claim based upon a pattern or practice of discrimination under ECOA. The Complaint describes Defendants' discriminatory policies and practices in all their relevant particulars, and identifies the actors (owners and operators of two "buy here, pay here" used-car dealerships, Auto Fare and United Car Sales), the time period (at least from 2006 through 2011), the location, and the alleged basis of discrimination (targeting African-American purchasers). Doc. 1 at ¶¶ 5–7, 10, 11, 19, 24. The Complaint details the specific discriminatory acts constituting a pattern or practice of targeting African-American purchasers, for installment sale contracts containing unfair and predatory terms. Plaintiffs allege the prevalence of disproportionately high sale prices, down payments, and annual percentage rates (APRs); disproportionately high rates of default and repossession compared to other subprime used-car dealers; and repossessions when customers were not in default. Id. at ¶¶ 13–19.

Taken as true, Plaintiffs' allegations that Defendant Saadeh referred to African Americans as "niggers" and "monkeys" are sufficient to plead direct evidence of discriminatory intent. See Faulkner v. Glickman, 172 F. Supp. 2d 732, 737-739 (D. Md. 2001) (finding that statements by decision makers may constitute direct evidence of discrimination). Plaintiffs also allege that Saadeh stated that he was particularly interested in African-American purchasers because he perceived them as having inferior intellect and fewer credit options, and thus more likely to accept the terms of these loans. Compl. ¶ 11. Plaintiffs have also alleged that Saddeh employed a particular sales agent because that individual was especially adept at persuading African

Americans to buy cars. Id. With these statements, the undersigned finds that Plaintiffs have sufficiently alleged that Defendant Saadeh intended to target African Americans for these unfair and predatory installment sale contracts. The undersigned finds these allegations sufficiently plead Plaintiff's claim for discrimination under ECOA, and respectfully recommends that Defendants' Motion to Dismiss be denied.

## IV. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that "Defendants' Motion to Dismiss Plaintiffs' Complaint," Doc. 8, be DENIED.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED**.

Signed: April 16, 2014

David S. Cayer
United States Magistrate Judge