UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-0008-RJC-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>and the STATE OF NORTH )<br>CAROLINA )<br>ex rel. ROY COOPER, Attorney General, )<br>   )<br>   **Plaintiffs,** )<br>   )<br>   vs. )<br>   )<br>   )<br>AUTO FARE, INC; SOUTHEASTERN )<br>AUTOCORP.; and ZUHDI A. SAADEH, )<br>   )<br>   **Defendants.** )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on a Motion to Dismiss by Defendants Auto Fare, Inc (Auto Fare); Southeastern Autocorp (Southeastern); and Zuhdi A. Saadeh (Saadeh) (collectively: Defendants) (Doc. 20); and the Magistrate Judge's Memorandum and Recommendation (M&R) recommending that the Motion to Dismiss be denied (Doc. 13). The Defendants have listed five (5) objections to the M&R. (Doc. 15). For the reasons stated below, the Court will deny the Defendants' motion.

I.  BACKGROUND

Defendants Auto Fare, Southeastern, and Saadeh petition this Court to set aside the Magistrate Judge's Memorandum and Recommendation and to dismiss the Plaintiffs' claims against them. The relevant facts are these: Plaintiffs allege that Defendants unlawfully engaged in a pattern or practice of "reverse redlining" by intentionally targeting African American purchasers at their car dealerships for unfair and predatory loans in violation of the Equal Credit

Opportunity Act (ECOA), 15 U.S.C. § 1691-1691f. (Doc. 1).

Defendants owned and operated used car dealerships known as Auto Fare and United Car Sales. (Id.). Plaintiffs allege that from 2006 through 2011, Defendants intentionally targeted African American buyers and extended them credit on predatory terms without properly assessing the buyers' credit. (Id.). They claim Defendants profited from charging sale prices above industry standard suggested retail prices and well above the wholesale prices paid by the Defendants. In addition, the Plaintiffs allege that Defendants required disproportionately high down payments and annual percentage rates (APRs) and engaged in disproportionately high rates of repossession as compared to other used car dealerships. The Plaintiffs also contend that Defendants repossessed vehicles even when the customers were not in default. (Id.).

Further, the dealerships are located in areas of Charlotte with a high concentration of African Americans, and the Plaintiffs allege that a majority of the used car sales have been to African American purchasers. (Id.). In addition, the Plaintiffs contend that Saadeh referred to the dealerships' African American customers as "niggers" and "monkeys" and made statements suggesting that he was interested in African American customers because he perceived them to be of inferior intellect and have fewer options for credit. (Id.). The Plaintiffs allege that Saadeh was the president and registered agent of Auto Fare and Southeastern at all times relevant to this lawsuit and that he gave final approval of all loan deals made at both dealerships. (Id.). They also claim that Saadeh said he employed a certain sales agent because that individual was especially adept at persuading African Americans to buy cars. (Id.).

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint.

See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To satisfy this Rule 8 requirement, the showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice." Id. Although the Court must consider all well-pled allegations in the complaint as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and must construe all factual allegations in the light most favorable to the plaintiff, Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999), the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## III. DISCUSSION

Plaintiffs have articulated five (5) objections, varying from general to specific, to encompass virtually the whole of the Magistrate Judge's findings and recommendations. A written objection to a magistrate judge's recommendations must identify the portion of the proposed findings or recommendations to which objection is made and state the basis for such objection. Opriano v. Johnson, 687 F.2d 44 (4th Cir. 1982). Additionally, de novo renew is not

3

necessary where a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations. See United States v. Mertz, 376 U.S.192 (1964).

Plaintiffs have forwarded the following objections with sufficient specificity to warrant de novo review from this Court: (1) that the Plaintiffs have not alleged sufficient facts to show Defendants maintained a discriminatory policy or that they engaged in acts of discrimination as a matter of regular procedure, (Doc. 15); (2) that the Plaintiffs have not alleged sufficient facts to show Defendants offered unfair and predatory loan terms to African- American customers, (Id.); (3) that no connection is established between Saadeh's alleged remarks and any decisional process of the Dealerships, (Id.); and, finally, (4) that Plaintiffs have not alleged that the Defendants chose the location based on the racial make-up of the area, or that residents of that area make up the majority of the Defendants' customer base. (Id.).

    A.    Discriminatory Policy

The Plaintiffs have sufficiently plead that Defendants engaged in a pattern or practice of discrimination under ECOA. To establish a pattern or practice of discrimination, Plaintiffs must prove that Defendants either: (1) maintained a discriminatory policy, or (2) engaged in acts of discrimination as a matter of regular procedure. See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 360 (1977) (Interpreting Title VII); Garcia v. Johanns, 444 F.3d 625, 632 (D.C. Cir. 2006) (Interpreting ECOA). Plaintiffs must prove "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." Teamsters, 431 U.S. at 336. Racial discrimination must be the company's standard operating procedure, in other words, "the regular rather than the unusual practice." Id.

4

The Plaintiffs' Complaint sufficiently details the Defendants' discriminatory policies and practices to overcome Defendants' Motion to Dismiss. (Doc. 1). The Plaintiffs have described the Defendants' discriminatory policies and practices during the time period of 2006 through 2011, the location of the dealerships in a neighborhood in Charlotte with a high concentration of African Americans, and the individuals involved in the discrimination. (Id.). In addition, the Complaint details the specific discriminatory acts constituting a pattern or practice of targeting African American customers for installment sale contracts with unfair and predatory terms. (Doc. 1).

B.  Unfair and Predatory Loan Terms

The Plaintiffs have alleged sufficient facts to claim that Defendants offered unfair and predatory loan terms to African American customers in violation of the ECOA. (Doc. 15 at 1). In order to state a claim based on reverse redlining, the Plaintiffs must allege that the Defendants' lending practices and loan terms were "unfair" and "predatory," and that the Defendants either intentionally targeted on the basis of race, or that there is a disparate impact on the basis of race. Hargraves v. Capital City Mortg. Corp., 140 F. Supp. 2d. 7, 20 (D.D.C. 2000).

The Plaintiffs' Complaint alleges numerous facts to support a claim for unfair and predatory terms in the installment sale contracts, including: the prevalence of disproportionately high rates of default and repossession compared to other used-car dealerships; high sale prices; large down payments; high annual percentage rates; and Defendants' practice of repossessing vehicles even when customers were not in default. (Doc. 1). In addition, the Complaint specifies instances of discriminatory conduct; for example, Defendant Saadeh's remarks about African Americans, the location of the dealerships, and the fact that a majority of the dealerships

5

customers were African American. (Id.). Viewed in a light most favorable to the Plaintiff, these facts are sufficient to show that Defendants' lending practices were unfair and predatory and that African Americans were targeted because of their race.

C. Saadeh's Remarks are Related to the Decisional Process of the Dealerships

The Plaintiffs have alleged sufficient facts to show that Saadeh's remarks are related to the decisional process of the dealerships. Remarks by decision makers can be direct evidence of discriminatory intent. Faulker v. Glickman, 172 F. Supp. 2d 732, 737-39 (D. Md.2001).

The Plaintiffs alleged in their Complaint that Saadeh was the president and registered agent of Auto Fare and Southeastern and that he gave final approval of all loan deals made at both dealerships. (Doc. 1). Therefore, taken as true, the allegations that Saadeh referred to African Americans as "niggers" and "monkeys" and that he stated he was particularly interested in African American purchasers because of their inferior intellect and fewer credit options are sufficient to plead direct evidence of discriminatory intent. See Faulkner, 172 F. Supp. 2d at 737.

D. Location of Defendant Dealerships

Finally, the Defendants claim that the Plaintiffs' use of the location of the dealerships is not enough to support their claim for discrimination under the ECOA because Plaintiffs do not allege that the Defendants chose the location based on the racial composition of the area. (Doc. 15). The Plaintiffs allege in their Complaint that the Defendants established the dealerships in close proximity to one another in an area of Charlotte where the majority of residents are African American. (Doc. 1). In Hargraves v. Capital City Mortg. Corp., the court found that the location of a lender's offices in predominately African American neighborhoods can be circumstantial evidence of targeting. 140 F. Supp. 2d 7, 20 (D.D.C. 2000). Plaintiffs' allegations that the

6

Defendants established the dealerships in predominately African American areas of Charlotte, if true, is circumstantial evidence that the Defendants intentionally targeting African Americans, and is enough to overcome Defendant's Motion to Dismiss.

For the reasons stated above, the Court **adopts** in whole the recommendations of the Magistrate Judge (Doc. 13) and **denies** Defendants' motion (Doc. 8)**.**

## IV. CONCLUSION

**IT IS THEREFORE ORDERED that** the Court **adopts** the Magistrate Judge's Memorandum and Recommendations (Doc. 13) and **denies** Defendants' Motion to Dismiss for failure to state a claim (Doc. 8).

Signed: June 25, 2014

Robert J. Conrad, Jr.
United States District Judge